**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-210** |
| | : | |
| **PASCAL GEDEON** | : | |

## MEMORANDUM

PRATTER, J.                                                                                    JULY 10, 2023

On May 20, 2021, a federal grand jury in the Eastern District of Pennsylvania returned an indictment, which charged Pascal Gedeon with two counts of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Mr. Gedeon, now proceeding *pro se*, has filed a Motion to Dismiss the Indictment, alleging, *inter alia*, that the indictment fails to plead all of the essential elements of the offense and that the prosecution of his case is violative of the Constitution. For the following reasons, the Court denies Mr. Gedeon's motion.

### BACKGROUND

On May 10, 2021, the grand jury returned a two-count indictment against Mr. Gedeon, which includes the following language:

<u>Count One</u>

The grand jury charges that:

On or about May 2, 2019, in Philadelphia, in the Eastern District of Pennsylvania, defendant PASCAL GEDEON knowingly distributed visual depictions using any means and facility of interstate and foreign commerce, and that had been mailed and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so, the producing of which involved the use of minors engaged in sexually explicit conduct, and the visual depictions were of such conduct.

In violation of Title 18, United States Code, Sections 2252(a)(2), (b)(1).

Count Two

The grand jury further charges that:

On or about May 4, 2019, in Philadelphia, in the Eastern District of Pennsylvania, defendant PASCAL GEDEON knowingly distributed visual depictions using any means and facility of interstate and foreign commerce, and that had been mailed and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so, the producing of which involved the use of minors engaged in sexually explicit conduct, and the visual depictions were of such conduct.

In violation of Title 18, United States Code, Sections 2252(a)(2), (b)(1).

Indictment at 1–2. The information sheet attached to the indictment stated that Mr. Gedeon could face a term of imprisonment of up to 20 years, a term of supervised release of five years, a fine of up to $250,000, and a $100 special assessment for each count.

The statutes cited in the indictment sheet state that

(a) [a]ny person who—

. . .

(2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

. . .

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(2). The statute continues, in relevant part, that "[w]hoever violates, or attempts or conspires to violate, paragraph (1), (2), or (3) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years." *Id.* § 2252(b)(1).

Mr. Gedeon entered a not guilty plea at his arraignment on June 1, 2021. He filed an initial, counseled motion to dismiss the indictment on the basis of its insufficiency, which the Government opposed. The Court denied the initial motion to dismiss, finding that the indictment set forth the essential elements of the crime charged, the statute at issue, and sufficient factual information. Mr. Gedeon then filed a *pro se* motion to dismiss the indictment, this time alleging not only the insufficiency of the indictment, but also violations of his Fourth Amendment, Fifth Amendment, Sixth Amendment, and Eighth Amendment rights.[1] The Government opposed this second motion, and Mr. Gedeon submitted a reply.[2] The Court thus considers this motion to be fully briefed and ripe for disposition.

## DISCUSSION

### I.    The Indictment Is Facially Sufficient

A motion alleging an indictment's lack of specificity or failure to state an offense must be made before trial. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). The analysis under Federal Rule of Criminal Procedure 12(b)(3)(B) "is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011)."[A] Rule 12(b)(3)(B) challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it."

---

[1]      Because Mr. Gedeon filed the instant motion *pro se*, the Court liberally construes each of his arguments and applies somewhat "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[2]      Mr. Gedeon has filed a motion requesting that the Court excuse his late reply pursuant to Federal Rule of Criminal Procedure 45. The Court grants the motion to extend time and has considered the supplemental arguments raised in Mr. Gedeon's reply brief.

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007). This rule is not a proper vehicle for a motion to dismiss an indictment on the grounds of insufficiency of the evidence. *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000).

Under Federal Rule of Criminal Procedure 7, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). "While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1) . . . ." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (internal citation omitted). "An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). To qualify as facially sufficient, an indictment must "(1) contain[] the elements of the offense intended to be charged, (2) sufficiently apprise[] the defendant of what he must be prepared to meet, and (3) allow[] the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989). "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019). Even a "[f]ailure to allege the statutory elements

will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication." *Gov't of V.I. v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998).

Mr. Gedeon argues that the indictment is insufficient because it does not inform him of the person or persons to whom he allegedly distributed or attempted to distribute the pornographic images. The Government counters that the indictment is sufficient because it enumerates the essential elements of the charged offense by tracking the statutory language of 18 U.S.C. §§ 2252(a)(2) and (b)(1), provides citations to those statutes, and provides the requisite factual orientation such that Mr. Gedeon can prepare his defense strategy or invoke double jeopardy as a defense against future prosecutions. *Rankin*, 870 F.2d at 112.

The indictment charging Mr. Gedeon meets the standard established by the Federal Rules of Criminal Procedure and Third Circuit caselaw—a standard that is "not exacting." *Stevenson*, 832 F.3d at 424. That is, both counts of the indictment contain short and plain statements of the charged offense, clearly tracking the statutory language. *See* Fed. R. Crim. P. 7(c)(1). The indictment cites to the statutes that Mr. Gedeon allegedly violated. *See id.* Plus, the indictment informs Mr. Gedeon of the dates on which the alleged violations occurred—May 2 and May 4, 2019. Therefore, the indictment adequately informs Mr. Gedeon of the charges against him and will allow him to invoke double jeopardy in the event of a subsequent prosecution. *See Stevenson*, 832 F.3d at 423.

Moreover, Mr. Gedeon is mistaken that the appropriate remedy—in the event that the indictment does in fact omit an essential element—is a *dismissal* of the indictment. In the Third Circuit, "an indictment that fails to include all essential elements of the charged offense is subject to harmless error review when the issue [i]s raised in the trial court." *Id.* at 426. That standard

requires this Court to ask "(1) whether the indictment provided [Mr. Gedeon] sufficient notice of the crime with which he had been charged and (2) whether [Mr. Gedeon] was harmed by losing the right to have the public determine whether there existed probable cause to charge the missing element." *Id.* at 428. Under the second inquiry, an appropriate instruction to the petit jury as to the essential elements of the crimes charged may cure an omission of an essential element in the indictment. *See id.*

Here, as to the first inquiry regarding notice, it is evident from the instant motion and his other *pro se* filings that Mr. Gedeon is on notice of the charges against him. As to the second inquiry regarding harm, the Court will provide a proper instruction to the jury regarding the elements that must be proven at trial.[3] Further, as the Government notes, Mr. Gedeon is charged both with completed distribution and attempted distribution of child pornography. So, in order to prevail at trial, the Government need not prove that Mr. Gedeon *completed* the crime of distribution—including by proving the element of sending the images at issue to a recipient—but instead must prove that Mr. Gedeon *intended* to commit the crime of distribution *and* performed an act or acts constituting a substantial step toward the commission of the distribution that strongly corroborates his intention to commit the crime. *See* 3d Cir. Model Jury Instr. (Crim.) § 7.01. Therefore, Mr. Gedeon was not harmed if the grand jury did not determine whether there existed

---

[3]     At trial, the Government must show beyond a reasonable doubt (1) "[t]hat the defendant knowingly . . . [distributed] a visual depiction, as alleged in the indictment, that contained materials which had been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer"; (2) "[t]hat the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct"; (3) "[t]hat such visual depiction was of a minor engaged in sexually explicit conduct"; and (4) "[t]hat the defendant knew that such visual depiction was of sexually explicit conduct and that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor." 5th Cir. Model Jury Instr. (Crim.) § 2.85A. "To 'distribute' something simply means to deliver or transfer possession of it to someone else, with or without any financial interest in the transaction." 5th Cir. Model Jury Instr. (Crim.) § 2.85A. The Court looks to the Fifth Circuit Model Instructions here for guidance because the Third Circuit Model Jury Instructions do not include an instruction on the elements of a violation of 18 U.S.C.§ 2252(a).

probable cause to charge the allegedly missing element—that is, actual receipt of the images by another person. *See Stevenson*, 832 F.3d at 428.

To the extent Mr. Gedeon relies on *United States v. Husmann*, 765 F.3d 169 (3d Cir. 2014), for the principle that the Government must present evidence that another person received the visual depictions in the indictment, such reliance is mistaken for two reasons. First, in *Husmann*, the government failed to introduce evidence *at trial* that another person had downloaded visual depictions from the defendant's shared folder. *Id.* at 176. An entirely different standard applies in such a post-trial situation than applies to the present pre-trial motion to dismiss the indictment, and Rule 12(b)(3)(B) is not the proper vehicle to assert insufficiency of the evidence. *DeLaurentis*, 230 F.3d at 661. Second, the defendant in *Husmann* had not been charged with *attempt* to distribute under 18 U.S.C. § 2252(b)(1)—as Mr. Gedeon is in this case—but solely with *completed* distribution under 18 U.S.C. § 2252(a)(2). *Husmann*, 765 F.3d at 173, 176. So, although the Government's failure at trial to prove distribution to another person in *Husmann* resulted in the court vacating the conviction under § 2252(a), the same failure in this case, should it go to trial, would not be fatal to the Government's case. *Id.* at 177.

Having found that the indictment is facially sufficient, the Court declines to dismiss the indictment on this basis.

## II.    18 U.S.C. § 2252 Is Not Void for Vagueness

Mr. Gedeon suggests that 18 U.S.C. § 2252 is unconstitutionally vague because he reads 18 U.S.C. § 2252(b) to criminalize a *failure to be punished* for the conduct described in § 2252(a) rather than criminalizing the behavior set forth in § 2252(a) itself.

"The void-for-vagueness doctrine reflects the fundamental principle that, in order to comply with the requirements of due process, a statute must give fair warning of the conduct that it prohibits." *United States v. Fontaine*, 697 F.3d 221, 226 (3d Cir. 2012). A statute is

unconstitutionally vague if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Both statutes that define elements of offenses and statutes that fix sentences for such offenses "may pose constitutional questions" under the void-for-vagueness doctrine. *United States v. Batchelder*, 442 U.S. 114, 123 (1979). An inquiry relating to a challenge under this doctrine "is undertaken on a case by case basis," and the Court must determine whether the statute at issue "is vague as applied to the affected party." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992).

Turning to the challenged statutory provisions, § 2252(a)(2) provides that knowing distribution of a visual depiction of a minor engaging in sexually explicit conduct, the production of which involved the use of a minor engaging in sexually explicit conduct, using any means of interstate commerce, including computers, is punishable "as provided in subsection (b)." 18 U.S.C. § 2252(a)(2). Section 2252(b)(1), in relevant part, states that "[w]hoever violates, or attempts or conspires to violate, [§ 2252(a)(2)] shall be fined under this title and imprisoned not less than 5 years and not more than 20 years." *Id.* § 2252(b)(1). The plain language of these provisions does not support Mr. Gedeon's interpretation that the conduct described in § 2252(a)(2) is not itself punishable, nor does there exist any linguistic hook that would logically bolster Mr. Gedeon's argument that § 2252(b) criminalizes a failure to be punished rather than, *inter alia*, the knowing distribution of pornographic images involving minors. Indeed, as the Government notes, by including citations to both § 2252(a)(2) and § 2252(b)(1) in the indictment, the Government properly put Mr. Gedeon on notice of the elements of the crimes with which he was charged, § 2252(a)(2), along with the charge of *attempt* to distribute child pornography and the minimum and maximum penalties associated with a conviction. § 2252(b)(1). A person of "ordinary intelligence"

would have "a reasonable opportunity to understand" that the conduct described in § 2252(a)(2) would expose him to the punishment described in § 2252(b)(1). *Hill*, 530 U.S. at 732.

Therefore, the Court concludes that 18 U.S.C. §§ 2252(a)(2) and (b)(1) are not void for vagueness, and the Court declines to dismiss the indictment under this rationale.

**III.     The Court Has Subject Matter Jurisdiction**

Mr. Gedeon next asserts that the indictment should be dismissed for lack of subject matter jurisdiction because "the indictment failed to allege an offense and charged a crime that does not exist under the United States Code." Def.'s Mot. to Dismiss the Indictment at 11.

Federal Rule of Criminal Procedure 12(b)(2) permits a defendant to move to dismiss an indictment for lack of jurisdiction. Fed. R. Crim. P. 12(b)(2). "The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also United States v. Potts*, 251 F. App'x 109, 111 (3d Cir. 2007) ("[W]here an indictment charges a defendant with violating the laws of the United States, section 3231 provides the district court with subject matter jurisdiction and empowers it to enter judgment on the indictment."); *United States v. Spencer*, 398 F. App'x 845, 848 n.4 (3d Cir. 2010) ("[The defendant's] other arguments also lack merit. He contends that district courts lack subject-matter jurisdiction over criminal matters but 18 U.S.C. § 3231 properly confers such jurisdiction.").

To reiterate, Mr. Gedeon has been charged with violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1). This Court has jurisdiction because Mr. Gedeon is charged with violating valid federal criminal laws.

Therefore, the Court denies Mr. Gedeon's motion to dismiss the indictment on this basis.

## IV.    There Has Been No Violation of the Fifth Amendment Equal Protection Right

Mr. Gedeon also argues that 18 U.S.C. § 2252 violates the Equal Protection Clause because it treats distributors of depictions of child pornography differently than distributors of images or footage of other crimes.

### A. Rational-Basis Review

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Unless laws create suspect classifications or impinge upon constitutionally protected rights, it need only be shown that they bear some rational relationship to a legitimate state purpose." *City of Dall. v. Stanglin*, 490 U.S. 19, 23 (1989) (internal citation and quotation marks omitted). The Supreme Court has described "the nature of rational-basis scrutiny [as] the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *Id.* at 26. Under this level of scrutiny, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961).

Under rational basis review, the Court will uphold a statutory classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). To put a finer point on it, there is no Equal Protection Clause violation where (1) "there is a plausible policy reason for the classification," (2) "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker," and (3) "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). However, "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing

decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Id.* at 15.

The burden is on Mr. Gedeon, as "the one attacking the legislative arrangement[,] to negative every conceivable basis which might support" the classification. *Madden v. Kentucky*, 309 U.S. 83, 88 (1940). The Court will not subject a legislative choice to "courtroom fact-finding" and is free to consider "rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315; *see also Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.") (internal quotation marks omitted).

Rational basis review is the appropriate level of scrutiny here. Mr. Gedeon does not argue that the group of individuals charged with distribution of child pornography constitute a "suspect classification." *Stanglin*, 490 U.S. at 23. Although he does contend that § 2252 impinges upon his First Amendment rights, this argument was foreclosed by the Supreme Court over thirty years ago, when it classified child pornography as outside the protection of the First Amendment.[4] *New York v. Ferber*, 458 U.S. 747, 763 (1982).

---

[4]     In reaching that conclusion, the Supreme Court noted that "a State's interest in safeguarding the physical and psychological well-being of a minor is compelling," while "the value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis.*" *Ferber*, 458 U.S. at 756–57, 762 (internal quotation marks omitted). In *Ferber*, the Supreme Court also "grounded its analysis in a previously recognized, long-established category of unprotected speech"—that is, speech or writing that is integrally a part of conduct that violated a valid criminal statute. *United States v. Stevens*, 559 U.S. 460, 471 (2010). So, in the context of child pornography–related criminal prosecutions, courts have recognized for decades that "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake, that no process of case-by-case adjudication is required." *Ferber*, 458 U.S. at 763–64; *United States v. Williams*, 553 U.S. 285, 288 (2008) ("[A] statute which proscribes the distribution of all child pornography, even material that does not qualify as obscenity, does not on its face violate the First Amendment.").

**B. Application of Rational-Basis Review to § 2252**

The Court must now inquire whether the legislative choice is conceivably and rationally related to a legitimate government interest. *Beach Commc'ns*, 508 U.S. at 313–15.

The legislature has frequently asserted a legitimate government interest in punishing child pornography–related crimes. In passing the Child Pornography Prevention Act of 1996, which amended the statute under which Mr. Gedeon is charged, Congress found that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites" and "can desensitize the viewer to the pathology of sexual abuse or exploitation of children." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121(4), 110 Stat. 3009, 3009-26 (1997). Congress also remarked on the harmful cycle of supply and demand presented by child pornography, which "inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." *Id.* § 121(10)(B), 110 Stat. at 3009-27. When passing the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), which also amended § 2252, Congress stated that "'[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance,' and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." PROTECT Act, Pub. L. No. 108-21, § 501(2), 117 Stat. 650, 676 (2003) (quoting *Ferber*, 458 U.S. at 757). Courts, too, have frequently remarked on the legitimate government interest in protecting the well-being of minors. *See Ferber*, 458 U.S. at 756–58 ("It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling . . . . The legislative judgment, as well as the

judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.") (internal quotation marks omitted); *accord United States v. Williams*, 553 U.S. 285, 307 (2008); *Osborne v. Ohio*, 495 U.S. 103, 109 (1990); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002). There is indisputably a legitimate government interest here.

It requires no logical stretch to find that the statute at issue here is rationally related to the goal of preventing the sexual exploitation of children and reducing the market in child pornography. There are numerous conceivable bases for a distinction between those who distribute visual depictions of sexual abuse of minors and those who distribute visual depictions of other crimes. Congress conceivably might have intended to treat distributors of child pornography differently because "child pornography harms and debases the most defenseless of [this country's] citizens," whereas other crimes do not have such a particular focus on a vulnerable population. *Williams*, 553 U.S. at 307. Congress also conceivably might have recognized that there exists "a market for the exploitative use of children," which must be "stamp[ed] out . . . at all levels in the distribution chain" and which is simply not comparable to markets for depictions of other crimes. *Osborne*, 495 U.S. at 109–10. It is also conceivable that Congress found that the potential of distributed child pornography to "inflame" and encourage viewers to prey on members of society differed in degree from distributed depictions of other crimes. Child Pornography Prevention Act of 1996, Pub. L. No. 108-21, § 121(10)(B), 110 Stat. at 3009-27. These examples are not exhaustive.

Mr. Gedeon does not meet his burden "to negative every conceivable basis" that would support the distinction between distributors of child pornography and distributors of depictions of other crimes. *Madden*, 309 U.S. at 88. He asserts only that imagery of other crimes "may incite

more crimes to be committed." Def.'s Mot. to Dismiss the Indictment at 13. But he fails to acknowledge the particular harm of child pornography to a vulnerable population of society and the large underground market specific to the crime with which he has been charged.

Therefore, the Court concludes that the punishment for distribution of child pornography under § 2252 is rationally related to a legitimate governmental purpose. Mr. Gedeon's argument under the Equal Protection Clause fails, so it does not supply a ground that would warrant dismissal of the indictment.

## V.   No Eighth Amendment Violation Has Transpired

Mr. Gedeon fleetingly suggests that he is being held in violation of the Eighth Amendment because it constitutes "unusual punishment" to be detained at all for behavior that, he argues, is not criminal in itself and at most would only encourage others to commit crimes.

The Eighth Amendment guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Mr. Gedeon's invocation of the Cruel and Unusual Punishments Clause is unavailing here because that clause "was designed to protect those *convicted* of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citation and internal quotation marks omitted) (emphasis added); *see also Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) ("[T]he Eighth Amendment's protections d[o] not attach until after conviction and sentence."). Arguably, the only "substantive limitation" of the Eighth Amendment on pretrial detention is that the "detention not be 'excessive' in light of the perceived evil." *United States v. Salerno*, 481 U.S. 739, 754 (1987).

To the extent Mr. Gedeon hints that his pre-trial detention is "excessive," given the compelling government interests in curtailing the distribution of child pornography, as discussed

above, the Court cannot find that the conditions of Mr. Gedeon's current detention are inappropriate. *Id.*

The Court thus denies Mr. Gedeon's motion to dismiss the indictment as it relates to an alleged Eighth Amendment violation.[5]

## VI.    No Fourth Amendment Violation Has Occurred

Next, Mr. Gedeon asserts that he is being held in violation of the Fourth Amendment because his detention is not reasonable in light of other statutes, which, he contends, more directly prevent the exploitation or abuse of minors.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. When a defendant alleges unlawful pretrial detention, such a claim falls under the Fourth Amendment's protections. *DeLade v. Cargan*, 972 F.3d 207, 210–11 (3d Cir. 2020). "And those constitutional protections apply even

---

[5]    Even if Mr. Gedeon's argument—*i.e.*, that he has been subjected to unusual punishment because of his pre-trial detention—had been more appropriately raised under the Due Process Clause of the Fifth Amendment, it would still fail.

"Due process requires that a pretrial detainee not be punished," while "[a] sentenced inmate . . . *may* be punished, although that punishment may not be cruel and unusual under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (internal quotation marks omitted) (emphasis added).

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539. As discussed above, there is a compelling and frequently reiterated government interest underlying § 2252(a)(2), that is, preventing the sexual exploitation of children and reducing the harmful market in child pornography. Mr. Gedeon's continued detention helps to ensure the safety of the community given the charges pending against him. *Cf.* 18 U.S.C. § 3142(e)(3)(E). Thus, even if Mr. Gedeon had raised this claim under the Fifth Amendment instead of under the Eighth Amendment, the Court would not grant the motion to dismiss the indictment on this basis.

after the start of 'legal process' in a criminal case . . . ." *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 360 (2017).

"[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Mr. Gedeon has not meaningfully thrown doubt upon the judicial determination that probable cause existed at the time of his arraignment. In this case, the Government moved for Mr. Gedeon's pretrial detention, noting that probable cause existed because the evidence against Mr. Gedeon included over 1,000 pornographic images of minors posted onto his Tumblr blog, personal IP address logins and personal identifiers tying Mr. Gedeon to this account, and Mr. Gedeon's statements that he had created the blog and used several other platforms to share the pornographic depictions at issue. Moreover, pursuant to 18 U.S.C. § 3142, because Mr. Gedeon stands charged with an offense involving a minor victim, he is subject to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" once a judicial officer finds that there is probable cause to believe that the charged violation occurred. 18 U.S.C. § 3142(e)(3)(E). A magistrate judge granted the Government's motion for pretrial detention following Mr. Gedeon's arraignment hearing. No constitutional violation occurred on this basis.

But in any event, even where Fourth Amendment violations have occurred—which, the Court takes pains to restate, is not the case here—a dismissal of an indictment is generally not the appropriate remedy. *United States v. Morrison*, 449 U.S. 361, 365–66 (1981) ("[W]e have not suggested that searches and seizures contrary to the Fourth Amendment warrant dismissal of the indictment. The remedy in the criminal proceedings is limited to denying the prosecution the fruits of its transgression."). The Court thus declines to dismiss the indictment on these asserted grounds.

## VII.    There Is No Fifth Amendment Due Process Violation

Mr. Gedeon argues that the Government improperly delayed seeking an indictment against him.

"[T]he Due Process Clause of the Fifth Amendment protects defendants against oppressive pre-indictment delay within the applicable limitations period." *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985).[6] "[I]n order to obtain a dismissal of charges on the grounds of pre-indictment delay pursuant to the Due Process Clause, a defendant must bear the burden of proving two essential facts: (1) that the government intentionally delayed bringing the indictment in order to gain some advantage over him, and . . . (2) [that] this intentional delay caused the defendant actual prejudice." *United States v. Ismaili*, 828 F.2d 153, 167 (3d Cir. 1987); *accord United States v. Marion*, 404 U.S. 307, 324 (1971) ("[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown . . . that the pre-indictment delay . . . caused substantial prejudice to [the defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."). A prosecutor is not compelled "to file public charges as soon as the requisite proof has been developed" against a criminal defendant because, in some cases, "an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice." *United States v. Lovasco*, 431 U.S. 783, 792–93 (1977). The Third Circuit Court of Appeals has held that years-long delays in bringing an indictment do not, in and of themselves, violate due process. *United States v. Robles*, 129 F. App'x 736, 738 (3d Cir. 2005) (holding that five-year delay between criminal conduct and indictment did not violate Fifth Amendment due process right);

---

[6]    Although Mr. Gedeon raises this claim along with his speedy trial right claim, "[t]he speedy trial guarantee of the Sixth Amendment does not apply to pre-indictment delay." *Sebetich*, 776 F.2d at 429. The Court thus construes Mr. Gedeon's argument regarding pre-indictment delay under the Fifth Amendment.

*United States v. Fraser*, 42 F. App'x 532, 533 (3d Cir. 2002) (dismissing Fifth Amendment claim as without merit because the defendant failed to demonstrate specific prejudice, notwithstanding a five-year delay between the alleged criminal act and the indictment).

Here, two years passed between Mr. Gedeon's alleged criminal activities and the date on which Mr. Gedeon was indicted for those crimes. But Mr. Gedeon has not submitted *any* evidence that the Government intentionally waited to bring the indictment against him in order to gain some tactical advantage, nor has he articulated how the delay caused him actual prejudice. *See Ismaili*, 828 F.2d at 167. So, Mr. Gedeon has not met his burden to show that any pre-indictment delay warrants dismissal under the Fifth Amendment.

## VIII.   No Violation of the Sixth Amendment Speedy Trial Right Has Occurred

Mr. Gedeon also seeks dismissal of the indictment for alleged violations of his speedy trial right.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court identified four factors that Courts should consider when determining whether a defendant's Sixth Amendment speedy trial right has been violated: "(1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant."[7] *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530–31). None of the factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy

---

[7]    Because Mr. Gedeon does not assert a claim under the Speedy Trial Act, 18 U.S.C. § 3161, the Court limits its analysis here to the *Barker* factors. *See United States v. Shulick*, 18 F.4th 91, 102 (3d Cir. 2021).

trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

### A. __Length of Delay__

The first *Barker* factor is "to some extent a triggering mechanism." *Barker*, 407 U.S. at 530. The Third Circuit Court of Appeals has concluded that a delay of fourteen months triggers review of the three other *Barker* factors. *Hakeem v. Beyer*, 990 F.2d 750, 755 (3d Cir. 1993); *see also United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009).

Mr. Gedeon was indicted on May 20, 2021. He filed the present motion to dismiss on November 10, 2022. As of this writing, approximately two years have passed since Mr. Gedeon's indictment. Because the resulting delay exceeds fourteen months, the Court finds that a speedy trial analysis under the remaining *Barker* factors is warranted.

### B. __Reasons for the Delay__

Courts next consider "the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. There are three categories of rationales for delay:

> A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. *Barker*, 407 U.S. at 531, 92 S. Ct. 2182. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S. Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S. Ct. 2182.

*Battis*, 589 F.3d at 679.

Mr. Gedeon argues that the delay is attributable to the following actions of the judge previously presiding over his criminal case[8] and the Government: (1) the Government filed

---

[8]   Mr. Gedeon's case was reassigned to this Court in July 2022, approximately 14 months after his indictment and arrest.

"vexatious" responses to his motion to suppress and his earlier motion to dismiss the indictment and has failed to progress this case to trial; (2) the Court postponed hearings as to several of the motions made by Mr. Gedeon for approximately six months; and (3) the Court postponed the trial date without justification.

First, Mr. Gedeon provides no detail as to why the Government's responsive filings to his motions to suppress and a previous motion to dismiss are "vexatious" or otherwise improper. While Barker holds that deliberate attempts to delay trial to "hamper the defense" are weighted against the Government, *Barker*, 407 U.S. at 531, the Court is not aware of any caselaw that penalizes the Government for filing briefs in opposition to the defendant's motions when, as here, such responsive briefs raise reasoned and meritorious arguments. To the contrary, the Court finds that delay caused by the Government's responses to Mr. Gedeon's complicated and numerous motions clearly constitute "valid reason[s]" that "justify appropriate delay." *Id.*

Second, Mr. Gedeon argues that the judge previously assigned to his criminal case postponed a hearing related to his motion to suppress and motion to dismiss the indictment for six months. At most, the delay resulting from this scheduling determination is a "neutral reason" resulting from the unfortunate reality of "overcrowded courts." *Id.* But a review of the docket suggests that the delay could be considered justified considering that Mr. Gedeon himself, or his then-counsel, had filed nearly twenty motions, responses, or letters to the Court before the hearing in question was scheduled.

As to the third alleged cause for delay, Mr. Gedeon contends that the judge previously assigned to his case improperly "skipped" the trial date assigned to this matter without justifying the continuation. Again, upon review of the docket, on July 9, 2021, the Court ordered, in light of the COVID-19 pandemic and the restrictions imposed on proceedings held in the United States

District Court for the Eastern District of Pennsylvania, that Mr. Gedeon's trial be continued to October 25, 2021. The Court further ordered that under 18 U.S.C. § 3161(h)(7)(A), the period of delay from July 9, 2021 until October 25, 2021 be excluded under the Speedy Trial Act. This particular delay will not be assigned to the Government. *See United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023) (noting that the Third Circuit Court of Appeals has "not addressed a Sixth Amendment speedy trial claim in the context of the delays engendered by the Covid-19 pandemic, but it is plain that the suspension of jury trials fits into the category of justifiable delay").

Then, on October 5, 2021, Mr. Gedeon's then-counsel filed a motion to continue the October 25, 2021 trial date. A Consent signed by Mr. Gedeon was filed with that motion to continue, which provided that Mr. Gedeon did not oppose the continuation of the trial date. It further provided that Mr. Gedeon agreed that the time between the filing of the motion to continue and the new trial date set by the Court would not deprive him of his Sixth Amendment speedy trial rights. Mr. Gedeon's motion to continue was granted, and the new trial was scheduled to begin on February 14, 2022. At the request of Mr. Gedeon's then-counsel, the trial date was further continued to March 21, 2022 for the purpose of case preparation. These continuances, requested as they were by Mr. Gedeon's then-counsel, will not be weighed against the Government.

On March 21, 2022, the previous judge continued the trial to May 17, 2022, in consideration of the parties' requests to hear arguments on motions still pending at that time. But before the new trial date, Mr. Gedeon's then-counsel filed a first motion to dismiss the indictment, the Government filed a motion to admit certain audio recordings, and Mr. Gedeon filed a *pro se* request that the Court address the alleged unconstitutionality of § 2252(b)(1). On July 18, 2022, Mr. Gedeon's criminal case was reassigned from the docket of the former presiding judge to this

Court. On July 29, 2022, this Court entered an order continuing Mr. Gedeon's trial date under 18 U.S.C. § 3161(h)(7)(A), (B) "to a date to be set after resolution of the pending motions and defendant's demand to represent himself." July 29, 2022 Order. Given the considerable amount of activity on this case's docket, due—indisputably in largest part—to the proactivity of Mr. Gedeon himself, the Court cannot find that the postponement of trial was not justified, so these delays, too, will not be weighed against the Government.

Having considered each of the asserted reasons for the delay, the Court finds that this factor weighs against finding a Sixth Amendment violation.

### C. Mr. Gedeon's Assertion of His Right

"Whether and how a defendant asserts his right [to a speedy trial] is closely related to the other [*Barker*] factors. . . ." *Barker*, 407 U.S. at 531. "The strength of [a defendant's] efforts [in asserting his right] will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable." *Id.* However, Courts may consider the other actions of a defendant if they reveal an unwillingness or an unreadiness to go to trial. *Hakeem*, 990 F.2d at 764; *accord United States v. Loud Hawk*, 474 U.S. 302, 314–15 (1986) (concluding that defendants' repeated assertion of their speedy trial rights "alone does not establish that [defendants] have appropriately asserted their rights [because] [t]hese assertions . . . must be viewed in the light of [defendants'] other conduct").

Mr. Gedeon was indicted on May 20, 2021. On October 5, 2021, he waived his speedy trial right relating to any delay resulting from his counseled motion to continue the October 25, 2021 trial date. Mr. Gedeon first asserted his speedy trial right on March 9, 2022; however, this right was asserted in Mr. Gedeon's motion to withdraw his motion to proceed *pro se* filed on November 12, 2021. That Mr. Gedeon changed his mind as to whether he wished to represent himself so soon before asserting his right to a speedy trial indicates that Mr. Gedeon was likely not, in fact, prepared

to go to trial at this time. *See Hakeem*, 990 F.2d at 764. Similarly, the Court continued the trial

date on July 29, 2022 to resolve Mr. Gedeon's various *pro se* motions and to address his subsequent

reassertion of his desire to represent himself. Mr. Gedeon then asserted his right to a speedy trial

for the second time on November 10, 2022, in the instant motion, and once more on April 20,

2023, in his motion to stop dilatory practices. Although Mr. Gedeon has asserted his speedy trial

right at least three times in the two years since the indictment, his other actions—including the

submission of approximately 50 *pro se* filings, and specifically multiple motions to withdraw

earlier-filed motions—during this time indicate an unwillingness, or a lack of readiness, to go to

trial. Thus, this factor weighs against finding a Sixth Amendment violation. *See Hakeem*, 990 F.2d

at 764; *Loud Hawk*, 474 U.S. at 314–15.

### D. Prejudice to Mr. Gedeon

There are two ways in which a defendant can establish prejudice. *Battis*, 589 F.3d at 682.

"First, he can affirmatively prove his suffering 'oppressive pretrial incarceration,' that he

experiences 'anxiety and concern' because of the impending trial, or, most importantly, that his

defense has been 'impaired as a result of the delay.'" *United States v. Nikparvar-Fard*, No.

18-cr-101-1, 2022 WL 17996018, at *9 (E.D. Pa. Dec. 29, 2022) (quoting *Battis*, 589 F.3d at 682).

"Second, a defendant can claim presumptive prejudice based on 'excessive delay [which]

presumptively compromises the reliability of a trial in ways that neither party can prove or, for

that matter, identify." *Nikparvar-Fard*, 2022 WL 17996018, at *9 (quoting *Battis*, 589 F.3d at

682). Mr. Gedeon, claiming presumptive prejudice only, fails to identify with any specificity how

the alleged delay in his prosecution has prejudiced his defense. That is insufficient under this

*Barker* factor when the record suggests that the majority of the delay has been a result of his own

actions. *See United States v. Komolafe*, 246 F. App'x 806, 810 n.3 (3d Cir. 2007) (finding that the

defendant's "constitutional rights to a speedy trial were not violated because . . . a major portion

of the delay was due to his own motions for extensions of time and postponement of trial [and] there [wa]s no evidence that he was prejudiced by oppressive pretrial incarceration or that his defense was impaired").

Upon consideration of all of the *Barker* factors, the Court concludes that Mr. Gedeon's Sixth Amendment speedy trial right has not been violated.

## CONCLUSION

Although throughout his motion Mr. Gedeon attempts to establish the shortcomings of the indictment and a panoply of constitutional violations, he fails on every asserted ground. For all of these reasons, Mr. Gedeon's Motion to Dismiss the Indictment is denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE